Herman Gaba and Dora L. Gaba v. Commissioner.
Gaba v. Commissioner
Docket No. 6171.
United States Tax Court
1945 Tax Ct. Memo LEXIS 84; 4 T.C.M. (CCH) 886; T.C.M. (RIA) 45288; September 12, 1945
George Goldberg, Esq., for the petitioners. Bernard J. Long, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioners' income tax for the year 1941 in the amount of $858.95. This deficiency arises by reason of respondent's disallowance of a partial bad debt claimed by petitioners in the sum of $5,951.01, which was a part of cash advances made by petitioner Herman Gaba in the total sum of $17,201.01 to Bayside Clearview, Inc. Respondent held that these advances constituted a capital investment in and not loans to that corporation and that no part of the investment became worthless in the taxable year. Findings of Fact Petitioners, who are husband and wife, resided during the taxable year at 677 Crown Street, Brooklyn, New York, and filed *85 a joint return. Petitioner Herman Gaba will be hereafter referred to as "petitioner." On January 2, 1936 one Walter Ring secured an option from Little Bay Improvement Corporation to purchase 54 acres of unimproved land known as the "Bodlaw Estate," situated at Bayside, in the Borough of Queens, City of New York, for $225,000, and which required the payment of $67,500 in cash. This option had to be exercised by said Walter Ring on or before February 29, 1936. Ring did not have the necessary funds with which to consummate the option and approached petitioner and others for a loan. On or about April 7, 1936, petitioner and his associates entered into a written agreement with Ring, in and by which agreement they agreed to make a loan to a corporation to be formed by Ring in the sum of $80,000, which was subsequently increased to $90,000. The corporation named Bayside Clearview, Inc. agreed to execute and deliver to petitioner and his associates a purchase money bond and mortgage secured by the real estate, and to repay the sum of $90,000 within two years from the date thereof and to pay interest at the rate of five percent per annum semi-annually. By the agreement and as a consideration *86 to petitioner and his associates for making the loan, Ring agreed to have the corporation issue to petitioner and his associates sixty percent of the capital stock of the corporation upon payment by petitioner and his associates for such stock of the sum of $120. Thereafter, and prior to April 29, 1936, a corporation was organized under the laws of the State of New York, with an authorized capital stock of two hundred shares of no par value, known as Bayside Clearview, Inc.
Petitioner and his associates in the $90,000 mortgage received 120 shares or sixty percent of the capital stock of the corporation. Ring, who had no interest in the mortgage loan of $90,000, received 80 shares or forty percent of the capital stock. Petitioner himself received 15 shares or 7 1/2 percent of the capital stock. On the 29th day of April, 1936 the property was duly conveyed to Bayside Clearview, Inc., and that corporation thereupon executed and delivered a first purchase money bond and mortgage in the sum of $157,500 to the sellers of the property and a second purchase money bond and mortgage in the sum of $90,000 to petitioner and his associates representing the amount borrowed from them. Of this *87 amount petitioner advanced $11,250, or 12 1/2 percent. Bayside Clearview, Inc. had no income nor funds from which to pay the carrying charges accruing on the property which it acquired. Therefore, petitioner and his associates advanced from time to time sufficient moneys to pay taxes and interest on the first mortgage as it accrued and became due, in order to protect the lien of their second mortgage. The total amount of these advances up to December 31, 1941, was $58,731.67. Of this amount petitioner paid the sum of $5,951.01 as his share, or approximately 10.13 percent. These advances were charged by the corporation to its land account. In the beginning of 1941 petitioner sought the advice of people who, he felt, were competent to appraise the property of the corporation with regard to its value. He concluded that the property had an overall value of approximately $225,000. In 1938 the City of New York condemned a part of the property for the construction of a belt highway. Thereafter, on account of construction work going on in the area in which the property was located it was difficult to get into the property and exhibit it to prospective purchasers. Prior to May 1, 1941 petitioner *88 decided that there was not sufficient equity in the real property owned by Bayside Clearview, Inc. to justify any further advances by him, and therefore refused to lend any further sums of money towards the carrying of this property. Before 1941, he had been contributing 12 1/2 percent of the total advances made to the corporation. During the year 1941 the value of the property owned by the corporation, which was security for the purchase money bond and mortgage and loans made by said petitioner, did not exceed the sum of $225,000. At that time the total amount of the obligations of the corporation was $282,637.23. After October 1941 the corporation did not pay the taxes due upon its property, and after April 1941 it was unable to pay the interest due upon the first mortgage. In order to avoid a foreclosure of the prior mortgage for nonpayment of interest and taxes, petitioner Herman Gaba and his associates consented to a sale of the property on December 16, 1942, which sale when consummated resulted in petitioner's receiving the sum of $1,020.37 in full for his share in said bond and mortgage of $90,000 and all other loans made by petitioner in connection therewith. In 1941 *89 petitioner concluded that the sum loaned by him, amounting to $5,951.01, as his share for the payment of prior interest and taxes, could not be recovered from a sale of said property, and wrote off this amount as a partial bad debt in that year, which he deducted from his gross income in his return for the taxable year. Opinion KERN, Judge: The principal issue argued by the parties is whether the amount of $5,591.01 representing the sums advanced by petitioner to Bayside Clearview, Inc., in excess of the sum of $11,250 loaned by him on the security of a second mortgage on its real estate, constituted additional loans or contributions to the corporation's capital. Petitioner contends that the advances constituted additional loans and that when he ascertained in the taxable year that the debt created thereby was recoverable only in part because in that year the total debts of the corporation exceeded the then value of its assets, he was entitled in that year to take a deduction of that part of the advances which he determined to be at that time uncollectible. Respondent contends that the advances were contributions to capital and thus investments; that these investments are not *90 shown by the evidence to have become worthless in the taxable year; and that even if they are considered as loans the evidence as to partial uncollectibility is so unconvincing that we can not say that respondent abused his discretion in disallowing the deduction claimed. The test whether advances to a corporation constitute loans or capital contributions is a general one and is not capable of being applied with mathematical precision. As it is stated in Van Clief v. Helvering, 135 Fed. (2d) 254, 256, "Advances are an additional contribution of capital if they are intended to enlarge the stock investment, but not if they are intended as a loan." Obviously each case must rest on its own peculiar facts. Here the original advances in the total amount of $90,000 were loans evidenced by mortgage bonds, the stock of the corporation was issued not solely to those persons from whom the corporation borrowed money and in proportion to the amounts borrowed but was also issued in a substantial percentage to the person turning over to the corporation the option under which it acquired its property, the advances were for the purpose of protecting the lien of the second mortgage securing *91 the original loan of petitioner by paying interest charges on the first mortgage and taxes and therefore under general law became collectible as part of the original mortgage debt, ( Sidenberg v. Ely, 90 N. Y. 257), and the advances in question were not in proportion to his share of the corporation stock outstanding but in proportion to his participation in the mortgage loan. For these reasons we are of the opinion that the advances in question are to be considered as loans and not as additional contributions of capital. However, this conclusion does not result in a decision favorable to petitioner. Under section 23 (k) (1) of the Internal Revenue Code, [1] it is necessary, in order to justify a bad debt deduction that the taxpayer prove that the debt became worthless at least in part in the taxable year. Cittadini v. Commissioner, 139 Fed. (2d) 29. In the case of a deduction on account of a partial bad debt, there must also be a chargeoff during the taxable year of that part of the debt claimed as a deduction; but the same prerequisite exists, that is, that the debt become worthless, in whole or in part, during the taxable year. *92 The record in the instant case does not show that petitioner's debt became worthless in the taxable year. We have accepted as a fact petitioner's testimony that the value of the property of the debtor corporation during the taxable year was less than the amount of its obligations. But there is no evidence upon which we could make a finding as to the year in which this became so. Petitioner, who was the only witness, testified that in 1938 certain construction work made ingress and egress to and from the property almost impossible but did not relate this testimony to values in 1941. He did testify that home building was, in effect, prohibited by the Federal Government in 1941 because of a system of restrictions and priorities. However it is obvious that in this testimony petitioner was mistaken since these restrictions were not made until the passage of the Second War Powers Act of March 27, 1942 (Public Law 507, 77th Congress), 7 Federal Register 2730 (April 9, 1942). This testimony is the only part of the record which would tend to show that the debt became worthless in 1941. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to debt evidenced by a security as defined in paragraph (3) of this subsection.↩